## O'NEAL v. TRENCK.

No. 1990.

Court of Civil Appeals of Texas. Beaumont. July 26, 1930.

Rehearing Denied Oct. 8, 1930.

Kitching & Kenna, of Beaumont, for appellant.

D. E. O'Fiel, of Beaumont, for appellee.

WALKER, J.

This was a suit in county court at law by appellee against appellant for the contract price of a roof placed by appellee upon one of appellant's buildings in Port Neches, Tex. The defense was that appellee had contracted to furnish a Barber's asphalt roof, which he failed to furnish, but in fact furnished an inferior roof made by Johns-Mansville, and, second, that appellee agreed to furnish appellant with the Barber ten-year roof guaranty, which appellee failed to furnish. The jury found that appellee agreed with appellant to furnish a Barber asphalt roof, and that he in fact furnished the roof as per contract; and that he agreed to furnish appellant the Barber ten-year roof guaranty, and that he in fact furnished the guaranty, as per contract. On this verdict judgment was entered in appellee's favor for $300, with interest from the 1st day of January, 1926, at the rate of 6 per cent. per annum.

■ It was shown without controversy that appellee contracted to furnish a Barber's asphalt roof. Appellant's second assignment of error is that the answer of the jury, to the effect that appellant furnished this roof, is against the great weight and preponderance of the testimony. This assignment is sustained. Appellee testified that he furnished the roof as per contract. But the evidence against him on this issue was overwhelming. He is contradicted by the man who, in fact, sold him the roof, who testified it was a Johns-Mansville roof. Mr. Babin, an architect, to whom appellant agreed to leave the matter for adjustment, testified that appellee told him he did not use the Barber's roof but a roof made of different material. Mr. Babin said: "Mr. Trenck had completed the roof and had trouble in getting a settlement and he explained to me what he had on there and when he told me he could not have settlement I wanted to be fair but I brought out the fact that I asked him the question if he had put the roof on the way we had talked about it and he said not. Some reason why he didn't get it. Put some other kind of material. He bought it at Beaumont Building Material Company."

Mr. Perry Brown, representing the Beaumont Building Material Company, testified: "Yes sir, I later talked to Mr. Trenck about this material. I do not remember in our later conversation if there was anything said about where it went or who was to pay for it. I do remember having sent out to see and collect the bill from whom I thought—yes sir, I investigated to see where it went. Yes sir, I found out where the material went. It went on a building in Port Neches. I think I know the owner of the building where this material went; I think it was one—I sent a man in our employ. * * * Yes sir, after this time I had a conversation with Mr. Trenck about this statement for this material. Mr. Trenck came and asked that we give him a guarantee, or rather get him a guarantee, covering the roof. He had to tell me where the building was. He did tell me. The name of the building I don't know. One owned by Jones O'Neal Furniture Company in Port Neches. * * * Yes sir, I remember Mr. Trenck coming in and asking for a guarantee for a roof from Johns-Mansville."

Appellant testified that appellee told him "that he delivered Johns-Mansville material instead of Barber material and just have not

got 'a Barber roof on there. * * * I was there when it was being put on. Yes sir, I noticed the wrappers; when I came down off the roof I noticed there was some wrappers there and sometime after this I remarked about those wrappers with Johns-Mansville on them; thats the thing that brought this thing up. Yes sir, I saw those wrappers myself; cut through the rolls." Appellant testified further that he told appellee he did not like "Johns-Mansville like I do Barber; I want somebody to stand behind the roof." He testified further that he told appellee that he would take a Johns-Mansville guaranty instead of the Barber guaranty, provided he would furnish him a guaranty of that character. Appellee was not able to furnish that guaranty as appellant requested, saying to appellant, as appellant testified; "I'm unable to get that Johns-Mansville guarantee; the man says he was not there when I put it on and he wont give me a guarantee."

The jury also found that appellee agreed to furnish appellant with the Barber ten-year roof guaranty, and that he in fact furnished this guaranty as per contract. The finding that the guaranty was furnished is wholly without support. When this case was first being tried appellant agreed in open court to pay the contract price of the roof if he was furnished with a guaranty as per contract. Announcements were withdrawn, and the case continued that the guaranty might be furnished, and in due time appellee tendered appellant the Barber guaranty, which he asked to be returned for correction in certain respects, especially as it related to the description of the house upon which the roof was used. Appellee returned the guaranty for correction. Then appellant, as in good morals he was bound to do, wrote the Barber people the following letter:

"Jones O'Neal Furniture Company.

"Beaumont, Texas, Dec. 20, 1927.

"The Barber Asphalt Co., Philadelphia, Pa.

"Gentlemen: "We have a law suit with one of your exagents, Max Trenck about a roof he put on for us.

"He brought us your samples and sold us a ten year guaranteed Barber roof.

"When he did the work he used Johns-Mansville material bought from your now agent, Beaumont Building Material Company. The roof leaked immediately and has always leaked since that time.

"He would not sign application for Genasco Guarantee, because we knew he did not use your material.

"When the matter got into Court we through the Judge's solicitation signed one of these applications. It was sent on to you, and the opposing council has received a guarantee supposed to be from you.

"The location of the building is indefinite on this guarantee, hence we are intending to have this sent back for correction.

"We simply want to give you the facts in this case, and put you on notice that it is our purpose to make you live up to the guarantee in case it is finally issued by you.

"All we want is a good roof, but in fairness to you we think you ought to know the facts.

"After this roof was on, Mr. Trenck acknowledged to us that he used Johns-Mansville material, so we agreed to take a Johns-Mansville instead of a Barber guarantee, but the Johns-Mansville Company would not issue a guarantee.

"We waited then to find out what results we might get from the job. The roof now leaks and should you issue guarantee after proper investigation, we want our roof repaired.

"Mr. Trenck is not longer your agent, who will we look to for your services?

"Please give us an answer as soon as possible.

"Yours truly,

"Jones-O'Neal Furniture Co.

"By: E. C. O'Neal."

On receipt of this letter the guaranty was withheld by the Barber people, and no other guaranty was ever tendered. These facts do not support the finding that the guaranty was furnished. When appellee withdrew his tender of the guaranty for the purpose of complying with appellant's request, in order to constitute a tender, it was necessary to offer appellant again a guaranty, and that was not done. When the Barber people withdrew the tender of the guaranty to appellant upon the receipt of appellant's letter, the issue of "tender" was taken out of the case. It should also be said that the actual issue submitted was that appellee "furnished" the guaranty. Under all the facts no guaranty was furnished.

No issue was pleaded by appellee that the tender or furnishing of the guaranty was prevented by any wrongful act on the part of appellant. In fact, the letter written by appellant was not a wrongful act. It was his duty to acquaint the Barber people with the facts as he understood them; otherwise there would have been a defense against him upon any suit or claim instituted by him on the guaranty.

It is true that appellant stated as a fact that Johns-Mansville material was used when, as between him and appellee at that time, that was a disputed issue. But, as just stated, no issue was raised against him because of this statement.

Upon another trial, if appellant tenders a proper charge on the burden of proof, it should be given. The other errors assigned will not occur again. For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial.